IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

BEVERLY JO HICKSON,                    )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )          CIVIL ACTION NO. 1:07-00295
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the

Plaintiff's Motion for Summary Judgment (Document No. 9.) and Defendant's Motion for Judgment

on the Pleadings. (Document No. 11.) Both parties have consented in writing to a decision by the

United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Beverly Jo Hickson (hereinafter referred to as "Claimant"), filed an application

for SSI on July 2, 2004 (protective filing date), alleging disability as of July 30, 2000, due to seizures;

bad knees, shoulders, wrists, and hands; ovarian cysts; nerves; and knee problems. (Tr. at 17, 56, 57-

65, 82, 85.) The claim was denied initially and upon reconsideration. (Tr. at 29-31, 36-38.) On April

8, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 40.) The

hearing was held on November 16, 2005, before the Honorable William B. Russell. (Tr. at 633-72.)

By decision dated March 31, 2006, the ALJ determined that Claimant was not entitled to benefits.

(Tr. at 17-25.) The ALJ's decision became the final decision of the Commissioner on March 16,

2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On May 9, 2007,

Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two,

three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since she filed her application on July 2, 2004. (Tr. at 19, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from carpal tunnel syndrome, knee problems, depression, posttraumatic stress disorder ("PTSD"), and a history of a seizure disorder, which were severe impairments. (Tr. at 19, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for work at the sedentary level of exertion, as follows:

> [C]laimant has the residual functional capacity to lift up to ten pounds; sit six hours out of an eight hour day; stand up to two hours in an eight hour day; would be unable to do repetitive work with dominant hand, but could use it periodically for work activity; and should avoid highly stressful situations such as dealing with anger or hostility by the public.

(Tr. at 20, Finding No. 4.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 23, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded at step five that Claimant could perform jobs such as a clerical worker, filing machine operator, and nonemergency dispatcher, at the sedentary level of exertion. (Tr. at 24, Finding No. 9.) On this basis, benefits were denied. (Tr. at 24, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 15, 1962, and was 43 years old at the time of the administrative hearing, August 3, 2006. (Tr. at 23, 58, 638.) Claimant had a high school education. (Tr. at 23, 91.) In the past, she worked as a pool manager, waitress, and cook. (Tr. at 23, 86-87, 93-97, 662-63.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial

evidence because the ALJ erred "by giving inappropriate credence to her severe determinable mental impairment." (Document No. 10 at 4-5.) Claimant contends that despite Dr. Robertson's opinion that Claimant's mental impairment was severe, and despite the fact that she was undergoing psychological counseling and that she had attempted suicide by a self-inflicted gun shot wound to the head, the ALJ essentially disregarded the existence of her mental impairment and improperly determined that her mental impairment was mild. (Id. at 4.) Claimant further contends that the ALJ should have given little, if any weight to the opinion of the medical expert because he did not evaluate or treat Claimant. (Id. at 5.)

The Commissioner asserts that contrary to Claimant's allegations, the ALJ did not disregard Claimant's mental impairment, and specifically determined that she had documented depression, which included a past suicide attempt, and PTSD, which caused significant vocationally-relevant limitations. (Document No. 11 at 12.) The Commissioner further asserts that the ALJ properly considered the opinion evidence of record, including the medical expert's testimony and the opinions of Claimant's treating physician, pursuant to the factors set forth in 20 C.F.R. § 404.1527(d)(3) - (6). (Id. at 12-15.) Finally, the Commissioner asserts that the ALJ properly considered the opinions of Ms. Tate and the medical expert in finding that Claimant's mental impairment resulted in no more than mild limitations in maintaining attention and concentration. (Id. at 15-16.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the treatment notes from Dr. Robertson, the psychologist at Pathways Psychological Counseling Center, and Drs. Litz and Chand, demonstrate significant residual impairments. (Document No. 10 at 5-6.) Claimant notes that she ambulated with a cane, that due to carpal tunnel syndrome she was unable to do production type work with her dominant hand or work overhead, and that she had significant problems regarding concentration and attention. (Id.) Claimant

further alleges that the ALJ erred in failing to include in the hypothetical questions presented to the vocational expert Claimant's emotional limitations. (<u>Id.</u> at 6.)

The Commissioner asserts that though Claimant alleges significant residual impairments from a physical standpoint, the physical findings of Drs. Litz and Greeburg, revealed exaggeration on her part and inconsistent clinical findings, which contraindicated that she was as limited as she proclaimed. (Document No. 11 at 16.) Thus, the Commissioner asserts that the ALJ's pain and credibility assessment was proper. (<u>Id.</u>) The Commissioner further asserts that contrary to Claimant's allegations regarding her carpal tunnel syndrome, the ALJ did not dispute that she could not use her dominant hand for repetitive production type work. (<u>Id.</u>) Furthermore, the ALJ considered Claimant's allegations that her carpal tunnel syndrome affected her ability to reach, but properly determined that Claimant submitted "no medical opinion from an acceptable medical source that corroborated her assertion that her CTS condition, which involved her right wrist, adversely affected her ability to work overhead." (<u>Id.</u> at 17.) Finally, the Commissioner asserts that the ALJ acknowledged Claimant's testimony that she used a cane to ambulate due to weakness, but determined that Claimant submitted no evidence that established that "she was medically required to use a hand-held assistive device on an on-going basis." (<u>Id.</u> at 18.) Nevertheless, the Commissioner asserts that the VE identified jobs at the sedentary level that were performed in a seated position, and therefore, the use of a cane would not be a hindrance to job performance. (<u>Id.</u> at 20.)

1. <u>Mental Impairments</u>.

Claimant first alleges that the ALJ erred in disregarding her mental impairments, which her treating physician opined were severe impairments. (Document No. 10 at 4-5.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 11 at 12-16.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The medical evidence of record demonstrates that on August 14, 2004, Claimant sought emergency treatment for a self-inflicted gun shot wound to the right side of her head. (Tr. at 160-69.) Claimant admitted to extreme depression and grieving and bereavement since her father's death on January 23, 2004. (Tr. at 243.) After receiving emergency care, Claimant was voluntarily admitted for psychiatric observation. (Tr. at 242-87.) While hospitalized Claimant received individual and group psychotherapy, recreational therapy, educational therapy, medical assessment, and patient education regarding her presenting behaviors and circumstances. (Tr. at 245.) During her hospitalization, Claimant reported continued depression, but denied further suicidal ideation. (Id.)

As of August 20, 2004, Claimant's mood and affect had improved. (Id.) On discharge on August 26, 2004, Kenneth M. Fink, M.D., diagnosed major depressive disorder, recurrent, moderate, not psychotic; anxiety disorder not otherwise specified; bereavement; alcohol abuse, episodic; and nicotine dependence, cigarettes. (Tr. at 246.)

On September 16, 2004, Ted Webb, P.A., performed an initial psychiatric diagnostic evaluation of Claimant on behalf of Philip Robertson, M.D. (Tr. at 361-62.) Claimant reported that she had been in an abusive relationship with her ex-husband, who died four and a half to five years ago, and that she had been living with her fiancé for four years, in a stable relationship. (Tr. at 361.) On mental status exam, Mr. Webb noted that Claimant was in very good spirits, was laughing, and seemed to be very charismatic. (Tr. at 362.) He noted that she was very upbeat and charming and reported that she had learned how precious life was. (Id.) Claimant denied any suicidal ideation, plan, or intent. (Id.) Mr. Webb noted that her intellect and insight were good, and that depression was not apparent at that time. (Id.) Mr. Webb diagnosed major depressive disorder with recent suicide attempt and borderline personality disorder. (Id.) He counseled Claimant and continued her on her medication regimen. (Id.)

On October 1, 2004, Lisa C. Tate, M.A., a licensed psychologist, performed a psychological evaluation of Claimant, at the request of the State Agency. (Tr. at 368-72.) Claimant reported that she had a depressed mood on most days, diminished interest in activities, sleep difficulty, difficulty concentrating, frequent periods of crying, past suicidal thoughts and one suicidal attempt. (Tr. at 368.) Claimant described her then current mood as tired and reported having experienced similar problems for the past seven to eight years. (Id.) Claimant identified her ex-husband as a precipitating factor. (Id.) She indicated that the medication and counseling were helping her condition. (Tr. at 369.) As a result of her gunshot wound, Claimant reported memory problems. (Id.) On mental status exam,

10

Ms. Tate noted that Claimant was alert and oriented, had a depressed mood and mildly restricted affect, had logical and coherent thought processes, and had no indication of delusions, obsessive thoughts, or compulsive behaviors. (Tr. at 370.) Ms. Tate further noted that Claimant had no unusual perceptual experiences, had a fair insight, normal judgment and memory, and denied suicidal or homicidal ideation. (Tr. at 370-71.) Ms. Tate opined that Claimant's concentration, pace, and social functioning were mildly deficient and that her persistence and psychomotor behavior was normal. (Tr. at 371.)

Ms. Tate diagnosed major depressive disorder, recurrent, severe, and PTSD. (Tr. at 371.) Claimant reported her activities of daily living to include looking up history on the computer, performing housework, cooking, watching television, and reading. (Id.) On a weekly basis, Claimant reported that she did laundry and vacuumed, and on a monthly basis, attended medical appointments. (Tr. at 372.) Claimant identified reading and gardening as her hobbies. (Id.)

On October 30, 2004, Dr. James Binder, M.D., completed a form Psychiatric Review Technique, on which he opined that Claimant's major depressive disorder and PTSD resulted in mild limitations of activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. at 385-998.) On February 25, 2005, H. Hoback Clark, M.D., reviewed the evidence in the file and affirmed Dr. Binder's assessment as written. (Tr. at 385.)

At the administrative hearing on November 16, 2005, Dr. Marshall Tessnear, Ph.D., an impartial mental health expert, a licensed clinical psychologist, and a certified Disaster Mental Health Service provider testified that since July, 2004, neither Claimant's major depressive disorder nor PTSD met or medically equaled any Listing. (Tr. at 659.) Addressing the "A" criteria under Listings 12.04 and 12.06, Dr. Tessnear testified that Claimant had sleep disturbance, feelings of guilt and

worthlessness, persistent suicidal thoughts, and a loss of interest in activities. (Id.) Addressing the "B" criteria of the Listing however, Dr. Tessnear testified that Claimant had only mild limitations in maintaining social functioning, concentration, persistence, or pace, and perhaps only one episode of decompensation in August, 2004. (Tr. at 659-60.) He further testified that Claimant did not meet the "C" criteria. (Tr. at 660.) On questioning by Claimant's counsel, Dr. Tessnear regarding Claimant's past suicide attempt as follows:

> Well, a suicide attempt in itself, doesn't necessarily speak to, for the most part, for how she would be functioning past that one occasion, in terms of such things as her activities of daily living, her social functioning, and her concentration, and so forth. But certainly, for that period of time when she was hospitalized, certainly, her impairments were more severe at that time, yes.

(Tr. at 660-61.) Dr. Tessnear testified that beyond that point, her impairments were beyond mild. (Tr. at 661.) He further testified that if the ALJ accepted Claimant's testimony as credible, this did not necessarily mean that she had more than a mild limitation, to the extent that any restriction may be elective, as follows:

> There are many people who are not even depressed who don't like to be around other people very much. Certainly, I think that that's a factor, obviously, with her. I doubt that she likes to be around lots of strangers and so forth. But in terms of the people that she does interact with, there doesn't appear to be any significant disturbance in her relationships. Obviously, her deceased ex-husband, that was a disturbing kind of relationship, although from the testimony, that wasn't instigated by her.

(Tr. at 661.)

At step two of the sequential analysis, the ALJ noted that Claimant's depression was "documented including the suicide attempt in August 2004." (Tr. at 19.) The ALJ further noted that Claimant was diagnosed with PTSD in October, 2004, during a psychological evaluation. (Id.) At step three, the ALJ determined that neither Claimant's depression nor PTSD met or medically equaled a Listing impairment. (Tr. at 20.) In so finding, the ALJ concurred with the opinions of the

medical expert, Dr. Tessnear, and the state agency psychologist, who opined that Claimant's mental impairments did not meet a listing level of impairment. (Tr. at 20.)

Under the "A" criteria of Listing 12.04, the ALJ noted Dr. Tessnear's testimony that Claimant experienced sleep disturbances, feelings of guilt or worthlessness, difficulty concentrating, suicidal ideation, and a loss of interest in activities. (Tr. at 20.) Regarding the "A" criteria of Listing 12.06, Dr. Tessnear testified that Claimant experienced intrusive recollections of traumatic experiences, which were a source of marked distress. (Tr. at 20.) However, the ALJ determined, based on Dr. Tessnear's testimony that Claimant failed to meet the "B" or "C" criteria of either Listing because she had only mild functional limitations and only one episode of deterioration. (Tr. at 20.) The ALJ further noted that Claimant did not require a highly supportive living environment, and that minimal changes in her environment were not expected to cause decompensation. (Tr. at 20.)

Based on the foregoing, the Court finds that contrary to Claimant's allegation, the ALJ clearly did not disregard the existence of her mental impairment. The Court further finds that despite Claimant's allegation to the contrary, the ALJ properly considered the medical opinion evidence in accordance with the Regulations. Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given

13

to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of

the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

As discussed above, the ALJ summarized and considered the opinions of the medical expert, Dr. Tessnear. Addressing the factors under § 416.927(d)(2)-(6), the ALJ acknowledged that Dr. Tessnear was a clinical psychologist and certified Disaster Mental Health Service Provider, and therefore, was a specialist regarding Claimant's mental health issues upon which he provided testimony. (Tr. at 20, 44.) As the Commissioner notes, Dr. Tessnear was qualified to provide medical expert testimony in a social security disability proceeding. (Tr. at 44.) Dr. Tessnear reviewed the medical evidence of record, including Claimant's testimony, and rendered his expert medical opinion based on the totality of the evidence of record. The ALJ determined that Dr. Tessnear's opinions were consistent with the evidence of record. (Tr. at 20.) Claimant alleges however, that Dr. Tessnear's opinions were inconsistent with her past suicide attempt. Contrary to Claimant's allegation, the evidence of record demonstrates that subsequent to her suicide attempt, Claimant was treated with medications and counseling, which she reported helped her conditions. Despite having received a medical card, Claimant testified at the administrative hearing that she was not receiving mental health treatment. (Tr. at 657.)

The ALJ also considered the opinion of Mr. Webb, Claimant's treating physician's assistant. Though Mr. Webb opined that Claimant's mental impairments were severe, his opinions are not

supported by corresponding treatment notes which reflected that Claimant was very charismatic and exhibited near normal findings on mental status exam. The ALJ further considered the opinion of Ms. Tate. Despite her opinion that Claimant was unable to perform substantial gainful work activity, the ALJ noted that her findings revealed only mild limitations mild limitations of activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. Ms. Tate's opinion regarding Claimant's ability to maintain concentration is consistent with Dr. Tessnear's to the extent that he determined only mild limitations. Furthermore, Ms. Tate's and Dr. Tessnear's opinions are consistent with the opinion of the state agency medical consultant. Accordingly, the Court finds that the ALJ properly considered the opinion evidence of record in conformity with the Regulations and that substantial evidence supports his decision to adopt the opinion of Dr. Tessnear. Claimant's argument in this regard therefore, is without merit.

2. The ALJ's Decision is Supported by Substantial Evidence.

Claimant also alleges that the ALJ erred in assessing the residual functional limitations from Claimant's physical and mental impairments. (Document No. 10 at 5-6.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Document No. 11 at 16-20.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration,

16

disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special

significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2004). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

The ALJ determined that Claimant had the RFC to perform work at the sedentary level of exertion that involved lifting up to ten pounds, sitting six hours out of an eight-hour day, standing two hours out of an eight-hour day, no repetitive work with the dominant hand, periodic use of the dominant hand, and an avoidance of highly stressful situations such as dealing with anger or hostility by the public. (Tr. at 20.) Claimant contends that the ALJ erred in not finding that her use of a cane resulted in significant limitations that precluded all work. (Document No. 10 at 5-6.) The ALJ noted

18

in his decision Claimant's testimony that due to weakness in the knee, she ambulated with a cane. (Tr. at 20.) The ALJ further noted Claimant's testimony that she experienced difficulty standing, walking, and climbing stairs due to her knee problem. (Tr. at 21.) Claimant testified that she underwent multiple surgeries on both knees. (Id.) The ALJ acknowledged the medical evidence of record that Claimant suffered a right medial meniscal tear, for which arthroscopic surgeries were performed, and left knee problems, primarily of patellofemoral arthritis, for which a series of injections were administered. (Tr. at 21.)

In assessing Claimant's RFC, the ALJ determined that Claimant's knee impairment "could reasonably be expected to preclude prolonged standing and walking essentially limiting her to no more than sedentary work." (Tr. at 23.) The ALJ noted that the medical evidence documented knee pain, swelling, and limitation of motion. (Tr. at 23.) The ALJ therefore, determined that Claimant's knee impairment did not preclude the capability to perform sedentary work. This finding was consistent with the medical evidence of record, including Claimant's testimony that she used the computer, read, watched television, and played cards, which activities primarily are performed while sitting. (Id.) Though Claimant argues that she was "relegated" to the use of a cane, and therefore, could not work, as the Commissioner notes, the medical evidence does not demonstrate a medical need for the cane with the exception of periodic suggestions from Dr. Chand that Claimant use a cane during her course of treatment. Document No. 11 at 18.) SSR 96-9p however, requires medical documentation establishing the need for hand-held assistive devices in walking or standing. Contrary to SSR 96-9p, Claimant failed to submit any evidence which established the medical requirement that she use a hand-held assistive device on an on-going basis. Furthermore, the medical evidence of record demonstrates that Claimant was capable of performing sedentary work despite the use of her cane. (Tr. at 376-77, 381, 424, 465, 473, 565, 595, 606, 616, 618, 622.) Accordingly, Claimant's

argument on this issue is without merit.

Claimant next contends that her carpal tunnel syndrom precludes the use of her arms for repetitive work with her dominant right hand and working overhead. (Document No. 10 at 6.) The ALJ acknowledged Claimant's testimony that due to her carpal tunnel syndrome, her ability to reach and handle objects was limited. (Tr. at 21.) Claimant also testified that she frequently dropped objects. (Id.) In assessing Claimant's RFC, the ALJ credited Claimant's complaints and precluded her from performing repetitive work with her dominant hand, but determined that she was capable of periodically using her dominant hand for work activity. (Tr. at 20.) The ALJ's finding is supported by the medical evidence which demonstrates on mild carpal tunnel syndrom on EMG and nerve conduction studies (Tr. at 561.), full grip strength of her hands (Tr. at 379.), and the ability to perform fine manipulation. (Tr. at 379.) Claimant was capable of writing, buttoning, and picking up coins using either hand without difficulty. (Tr. at 20, 377.) Claimant's finding further is supported by Claimant's reported activities, including her use of a computer, cooking, performing some household chores, playing cards, and maintaining grooming and hygiene.

Though Claimant alleges that she was unable to reach overhead, the Court finds that the objective radiographic evidence of Claimant's elbows and shoulders were unremarkable (Tr. at 559, 563, 580.), and that she exhibited only mild weakness in shoulder abduction and rotation. (Tr. at 576.) Accordingly, nothing in the medical evidence suggests that Claimant was incapable of performing work overhead, and therefore, the Court finds that her argument is without merit.

Finally, Claimant contends that the ALJ failed to include in the hypothetical questions presented to the vocational expert any of Claimant's emotional limitations. (Document No. 10 at 6.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of

20

the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record. (Tr. at 663-65.) The ALJ first asked whether a person of Claimant's age, education, and past relevant work experience, who was unable to perform the standing requirements of light exertional work and could stand only two hours our of an eight-hour day, with no frequent repetitive work with the dominant hand or highly stressful jobs, could perform any work. (Tr. at 663-64.) In response to the ALJ's hypothetical, the ALJ responded that such a person could perform the unskilled jobs of a clerical worker, machine operator, and nonemergency dispatcher at the sedentary exertional level. (Tr. at 664.) The ALJ then asked whether any of the jobs identified would be altered with the inclusion of absenteeism from work for two days per month. (Tr. at 665.) The VE responded that such a limitation would be beyond the tolerance of an employer and would preclude all work. (Id.) On questioning by Claimant's counsel, the VE testified that the identified jobs required only average level of memory and concentration. (Tr. at 667-68.)

Claimant generally asserts that the ALJ's hypothetical questions do not reference Claimant's emotional limitations, but does not identify any specific emotional limitation which the ALJ failed to include in the hypothetical questions presented to the VE. The ALJ included only those limitations

supported by the evidence of record. Accordingly, the Court finds that the ALJ presented hypothetical questions to the VE that contained Claimant's mental limitations supported by the record. Claimant generally asserts that the ALJ's hypothetical questions. The Court further finds that the ALJ's hypothetical questions to the VE were proper and in accordance with the applicable law and Regulations. The ALJ's decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 9.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 11.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2008.

R. Clarke VanDervort
United States Magistrate Judge

22